UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| ANTHONY "TONY" FONTANA, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 2:18-cv-00019 |
| ) | Chief Judge Crenshaw |
| APPLE INC. AND VERIZON ) | |
| WIRELESS SERVICES, LLC, ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

This is a personal injury action allegedly arising from Anthony Fontana's use of a cell phone. Now pending are Motions to Dismiss filed by Apple Inc. (Doc. No. 40) and Verizon Wireless Services LLC (Doc. No. 42) that present the issue of whether those claims are preempted by the Telecommunications Act of 1996 ("TCA" or "Act") and its directive to the Federal Communications Commission ("FCC") to enact radio frequency ("RF") emission regulations. Because binding Sixth Circuit precedent suggest that they are, the motions will be granted.

### I. Background

Fontana's Amended Complaint sets forth Tennessee causes of action for strict liability in tort and breach of warranty. The essence of his claim is that he "has suffered cancer," and has "an increased risk of cancer" (Doc. No. 39, Amended Complaint ¶ 11) as a result of using an iPhone 6 that was designed, manufactured, and marketed by Apple, and sold and serviced by Verizon. Fontana asserts that Apple and Verizon "provided an inadequate warning that cell phone radiation is 'possibly carcinogenic' to humans" and "failed to warn of the damaging effects of radio-frequency radiation on human cells." (Id. ¶¶ 12(a), (b)). He also alleges that (1) Apple failed to design the iPhone 6 to include "certain technologies to reduce RF exposure," ( id. ¶ 13), and (2) Defendants

jointly engaged in a "common plan" in "fail[ing] to provide adequate warnings or instructions for the Plaintiff's health," (id. ¶ 28). Fontana seeks $750,000 in compensatory damages, and an equal amount in punitive damages.

## II. Discussion

This case is controlled by Robbins v. New Cingular Wireless PCS, LLC, 854 F.3d 315 (6th Cir. 2017), notwithstanding Fontana's efforts to characterize Robbins as simply involving a zoning dispute. There, "[s]everal Kentucky residents sued to stop a company from building a cell-phone tower near their homes," asserting "tort claims based on their concern that the tower will harm their health, devalue their properties, and emit excessive light and noise." Id. at 317-18. "To buttress their claims of harm to public health and property values, the Residents presented an expert report surveying the scientific literature on radio frequency . . . emissions from cell-phone towers," that "linked living near cell-phone towers to higher rates of cancer, brain tumors, and a multitude of other health problems." Id. at 318.

After observing that preemption can either be expressed by Congress or implied where federal and state law conflict, the Sixth Circuit concluded that plaintiff's claims were impliedly preempted by the TCA. More specifically, the Sixth Circuit found "obstacle preemption" – a form of implied preemption – applicable because state law in the field would be "'an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Id. at 319 (quoting Yates v. Ortho-McNeil-Janssen Pharm., Inc., 808 F.3d 281, 294 (6th Cir. 2015)). The court then held:

> Congress passed the TCA to foster industry competition in local markets, encourage the development of telecommunications technology, and provide consumers with affordable access to telecommunications services. Telecommunications Act of 1996, Preamble, Pub. L. No. 104–404, 110 Stat. 56 (1996). The TCA furthers those goals

2

> by preventing local governments from impeding the siting and construction of cell towers that conform to the FCC's RF-emissions standards. See 47 U.S.C. § 332(c)(7)(B)(iv). By delegating the task of setting RF-emissions levels to the FCC, Congress authorized the federal government—and not local governments—to strike the proper balance between protecting the public from RF-emissions exposure and promoting a robust telecommunications infrastructure. See id.; In the Matter of Procedures for Reviewing Requests for Relief from State & Local Regulations Pursuant to Section 332(c)(7)(b)(v) of the Commc'ns Act of 1934 in the Matter of Guidelines for Evaluating the Envtl. Effects of Radiofrequency Radiation, 12 F.C.C. Rcd. 13494, 13505 (1997).
>
> Allowing RF-emissions-based tort suits would upset that balance and impair the federal government's ability to promote the TCA's goals. A proliferation of suits similar to the one the Residents brought would tie up companies whenever they tried to build cell towers, leading to construction delays, increased costs, and ultimately, less public access to affordable cell-phone services. Widespread litigation would also shift the power to regulate RF emissions away from the FCC and into the hands of courts and state governments. Stanley v. Amalithone Realty, Inc., 94 A.D.3d 140, 940 N.Y.S.2d 65, 70 (2012).

Id. at 320.

Clearly, Robbins' holding goes beyond a zoning dispute and cell-phone towers. It broadly bars "RF-emissions-based tort suits" because they would impair the goals of the TCA. This has been the holding of many other courts as well.

For example, in Farina v. Nokia Inc., 625 F.3d 97, 125 (3d Cir. 2010), the Third Circuit upheld dismissal of a putative class action asserting that cell phones without antennas are unsafe. In so doing, the court addressed and rejected several of the arguments now raised by Fontana, including that (1) the savings clause of the TCA and/or the Federal Communications Act ("FCA") permits suits such as this, and (2) a claim alleging insufficient warnings does not call into play federal regulations and thus there is no preemption.

The savings clause in the FCA provides: "Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this

3

chapter are in addition to such remedies." 47 U.S.C. § 414. A savings clause in the TCA is similar: "This Act and the amendments made by this Act shall not be construed to modify, impair, or supersede Federal, State, or local law unless expressly so provided in such Act or amendments." PL 104–104, 110 Stat 56. Even though the court in Farina recognized that "[t]he presence of a savings provision is fundamentally incompatible with complete field preemption," and that both Congress and the FCC "hesitated to override all state law . . . within the field of RF preemption," it found conflict in the form of obstacle preemption applicable for several reasons.

The court began by reviewing Supreme Court cases that indicate "that regulatory situations in which an agency is required to strike a balance between competing statutory objectives lend themselves to a finding of conflict preemption." Farina, 625 F.3d at 123 (discussing Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 353 (2001); Medtronic, Inc., v. Lohr, 518 U.S. 470, 485 (1996); and City of Burbank v. Lockheed Air Terminal Inc., 411 U.S. 624, 638–39 (1973)). The court in Farina then opined:

> The reason why state law conflicts with federal law in these balancing situations is plain. When Congress charges an agency with balancing competing objectives, it intends the agency to use its reasoned judgment to weigh the relevant considerations and determine how best to prioritize between these objectives. Allowing state law to impose a different standard permits a re-balancing of those considerations. A state-law standard that is more protective of one objective may result in a standard that is less protective of others.

625 F.3d at 123. Such is the case with the FCC and cell phones:

> This is a situation "in which the Federal Government has weighed the competing interests relevant to the particular requirement in question, reached an unambiguous conclusion about how those competing considerations should be resolved in a particular case or set of cases, and implemented that conclusion via a specific mandate on manufacturers or producers." Lohr, 518 U.S. at 501. Here, the FCC has weighed the competing interests relevant to RF regulations—safety and efficiency. It has reached an unambiguous conclusion by adopting [a] set of standards, see 47 C.F.R. § 2.1093(d), and it has implemented that conclusion via a specific mandate,

4

requiring every cell phone sold in the United States to comply with those standards, see 47 C.F.R. §§ 2.803(a)(1); 24.51–.52.

Id. at 125. Further,

> Allowing juries to impose liability on cell phone companies for claims like [plaintiff's] would conflict with the FCC's regulations. A jury determination that cell phones in compliance with the FCC's SAR guidelines[1] were still unreasonably dangerous would, in essence, permit a jury to second guess the FCC's conclusion on how to balance its objectives. Were the FCC's standards to constitute only a regulatory floor upon which state law can build, juries could re-balance the FCC's statutory objectives and inhibit the provision of quality nationwide service. . . . As an agency engaged in rulemaking, the FCC is well positioned to solicit expert opinions and marshal the scientific data to ensure its standards both protect the public and provide for an efficient wireless network. Allowing juries to perform their own risk-utility analysis and second-guess the FCC's conclusion would disrupt the expert balancing underlying the federal scheme.

Id. at 125-6.

Utilizing much of the same rationale, the District of Columbia Court of Appeals found conflict/obstacle preemption applicable in a case seeking to hold "a group of cellular-telephone manufacturers, distributors, promoters, sellers, service providers, industry associations, and standards-setting entities" liable "for bodily injuries from cell phones that met the radio frequency . . . radiation standard adopted by the Federal Communications Commission" because "verdicts that would hold defendants liable for damages for bodily injuries caused by cell phones that met the FCC RF radiation limit 'would necessarily upset [the] balance [the agency struck] and . . . contravene the policy judgments of the FCC" regarding how safely and efficiently to promote wireless communication. Murray v. Motorola, Inc., 982 A.2d 764, 768, 777 (D.C. 2009) (citation omitted, brackets in original). So did the District Court for the Central District of California in a case

---

[1] "SAR" is an acronym for specific absorption rate that "measures the amount of energy absorbed in human tissue." Id. at 107.

5

alleging loss of hearing, vertigo and other personal injuries arising from the use of Samsung and Motorola cellular phones because "[t]o allow state claims such as these asserted by Plaintiff to proceed would be to question the judgment of the FCC on the issue of RF emissions standards." Bennett v. T-Mobile USA, Inc., 597 F. Supp. 2d 1050, 1053 (C.D. Cal. 2008); see also Firstenberg v. Monribot, 350 P.3d 1205, 1216 (N.M. App. 2015) (citation omitted) (affirming dismissal of claims for injunctive relief and money damages against neighbor whose electronic equipment (including cellphone) adversely affected plaintiff's health because "allow[ing] cell phone providers to 'be held liable even though they indisputably complied with' FCC regulatory requirements," would "impose a legal duty that would directly conflict with federal mandates"); Stanley, 94 A.D.3d at 146 (dismissing plaintiffs' claim that there were high levels of RF emissions in their apartment due to presence of cellphone towers on the roof because "[e]ntertaining plaintiffs' claims would require us to second guess the FCC's standards and engage in our own form of judicial regulation of RF emissions.")

Likewise in this case, Fontana's state law claims are conflict/obstacle preempted. He does not allege that the iPhone 6 was or is noncompliant with governing FCC regulations. To the contrary, he contends that "FCC-certified mobile phones are not deemed safe," and that "[s]cientific studies have demonstrated or will demonstrate a strong link between cell phone usage and cancer." (Doc. No. 46 at 3). Not only do these assertions mean that his claims fall within the holding of Robbins, they also undercut his argument that "[f]ederal law becomes relevant only as a defense and only after a plaintiff has made out the elements of his state law claims." (Doc. No. 46 at 5). By arguing that the iPhone 6 was defectively designed and manufactured, and sold in an unmerchantable manner because it "fail[ed] to provide developed antenna technologies that would

cancel radiation directed at the Plaintiff's use" and that "the manufacturer of the iPhone 6 . . . could have installed a shield device designed to reduce the cell phone radiation," (Doc. No. 48 at 3), Fontana is directly attacking the adequacy of the RF exposure regulations. Congress has left that decision to the FCC, not the court or a jury. See, Farina, 625 F.3d at 121 (finding that, even though plaintiff "attempts to characterize his claims as consumer claims based only on false and misleading statements, . . . he necessarily must establish that cell phones abiding by the FCC's SAR guidelines are unsafe to operate . . . and "[w]hether or not [he] intends to expressly challenge the FCC standards at trial, the inescapable effect of his complaint is to do so"); Murray, 982 A.2d at 780-81 (citations omitted, bracket in original) ("We are satisfied that state regulation (such as the damages awards that plaintiffs seek) that would treat FCC-certified cell phones as defective and unreasonably dangerous – because of the non-thermal effects of RF radiation, even though the phones meet the FCC RF radiation standard – conflicts with federal law. That is because, to prove their claims premised on allegations of injury from the non-thermal effects of RF radiation from FCC—certified cell phones, plaintiffs will necessarily have to accept [their] premise that the FCC's SAR maximum is inadequate to ensure the safe use of cell phones").

In reaching this conclusion, the Court recognizes Fontana's reliance on the Fourth Circuit's decision in Pinney v. Nokia, Inc., 402 F.3d 430, 458 (4th Cir. 2005), which held that requiring cell phones to carry headsets would have no effect on the efficiency of the wireless network and thus preemption did not apply. However, not only is Pinney apparently somewhat of an outlier, it has been criticized because "the focus on the headset requirement is misplaced. For the purposes of preemption analysis, it is the cause of action, and not the specific relief requested, that matters. Preemption speaks in terms of claims, not in terms of forms of relief." Farina, 625 F.3d at 133.

7

Pinney has also been criticized because (1) "the court appears to have reached its conclusion without considering the views of the FCC"; (2) the "court's focus was not on the adequacy of the FCC's SAR standard"; (3) it "gave weight to the fact that the FCC undertook its rulemaking relating to RF standards pursuant to the broadly applicable National Environmental Policy Act . . . rather than pursuant to specific radio-communications legislation," even though "the FCC adopted its current regulations after passage of the Telecommunications Act"; and (4) it improperly relied on the savings clause because "[t]he Supreme Court has 'repeatedly declined to give broad effect to saving clauses where doing so would upset the careful regulatory scheme established by federal law." Murray 982 A.2d at 778 n. 19.

Ultimately, whether such criticism is warranted does not matter because this Court is bound by Sixth Circuit authority. As already noted, Robbins makes clear that "[b]y delegating the task of setting RF-emissions levels to the FCC, Congress authorized the federal government – and not local governments – to strike the proper balance between protecting the public from RF-emissions exposure and promoting a robust telecommunications infrastructure," and "[a]llowing RF-emissions-based tort suits would upset that balance and impair the federal government's ability to promote the TCA's goals." Robbins, 854 F.3d at 820.

### III. Conclusion

Based upon the foregoing, the Motions to Dismiss filed by Apple Inc. (Doc. No. 40) and Verizon Wireless Services LLC (Doc. No. 42) are hereby **GRANTED** and this case is hereby **DISMISSED WITH PREJUDICE**.

The Clerk of the Court shall enter a final judgment.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE